UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| KAREN SCHMIDT AND JOSEPH SCHMIDT, | ) ) ) | |
| Plaintiffs, | ) ) | No. 5:10-CV-24-REW |
| v. | ) ) ) | MEMORANDUM OPINION AND |
| INTERCONTINENTAL HOTELS GROUP RESOURCES, INC. AND HOTEL d/b/a HOLIDAY INN LEXINGTON, KENTUCKY, | ) ) ) ) ) | ORDER |
| Third-Party Plaintiffs/Defendants, | ) ) | |
| v. | ) ) | |
| BULLS EYE LAWN AND LANDSCAPE, | ) ) | |
| Third-Party Defendant. | ) | |

*** *** *** ***

Defendants/Third-Party Plaintiffs, Intercontinental Hotels Group Resources, Inc. and Hotel d/b/a Holiday Inn Lexington, Kentucky, move the Court for summary judgment. DE #49 (Motion). Third-Party Defendant, Bulls Eye Lawn and Landscape, responded in favor (DE #52), Plaintiffs responded in opposition (DE #54), and Defendants subsequently replied (DE #55). Having reviewed the filings and full record under the required standards, the Court **DENIES** Holiday Inn's motion for summary judgment (DE #49).

1

**I. Relevant Background**[1]

This cases arises out of Plaintiff Karen Schmidt's slip and fall on a patch of ice outside the Holiday Inn Lexington, Kentucky. On January 30, 2009, Schmidt traveled to Lexington for a Gambler's Anonymous conference. DE #49-1 (Memorandum) at 2. She arrived at the Holiday Inn at approximately 8:30 p.m. *Id.* Schmidt spoke to employee Dustin Cook, who checked her in. DE #54 (Response) at 2-3. Plaintiff testified in deposition that Cook directed her to go outside the building to park her car and to enter the hotel from an outside entrance. DE #54-1 (Schmidt Depo.) at 19. He then gave her a map of the hotel and hotel parking lot, circled entrance H, and directed her verbally on how to get there. *Id*. She further testified that Cook did not inform her that she could get to her hotel room from the front lobby without going outside. *Id.* There is no evidence that Plaintiff had been to the hotel before. DE #54 (Response) at 13-14.

Schmidt relayed leaving the hotel lobby, driving her car to a parking spot, and walking from her car to the sidewalk. DE #54-1 (Schmidt Depo.) at 19. Upon exiting her car, she noticed that the parking lot was "surrounded with patches of ice." *Id.* at 21. She testified further that she walked "pretty gingerly" to the sidewalk area, carrying her suitcase in some areas, but that once she got to the sidewalk "it was clear" and she put her suitcase down. *Id.*

On the sidewalk, Schmidt pulled out her cell phone and called her friend, Diana Black. *Id.* at 22. Plaintiff stated that she rolled her suitcase with one hand, held up her phone with the other, also grasping her room key and papers. *Id.* She described the sidewalk as follows:

> On the sidewalk, looking in front of me, there was snow to the left and right. Now it could have been ice underneath. I don't know that, but I didn't try to find out. But—anyway, but the sidewalk was clear; it was wet, very clear. And it had—like I said, there was definitely pebbles of salt. You could see that it had

---

[1] In accordance with Federal Rule of Civil Procedure 56, the Court discusses the facts in favor of Plaintiff Karen Schmidt, the non-movant.

> been salted and plowed because it was—or shoveled, I should say, at that area because you did see the snow on the right and left, I mean, as I was walking in.

*Id.* at 26.

Schmidt described her fall as follows:

> I kind of put my arms back to try to catch my fall. You know, that's what I remember. I fell hard enough that my legs were in front of me, and I was flat down, and I had hit my head. I didn't hit my head extremely hard, as I said, or I would have—I mean, it would have been a lot—I would have not been in the shape to be able to kind of get my wits about me.

*Id.* at 27. Schmidt stated that she crawled over to the edge of the ice, stood up carefully, and examined where she fell. *Id.* at 30. Schmidt testified that she "was looking very close" and, for the first time, she saw the patch of ice. *Id.* Schmidt was unable to identify at deposition how big the ice patch was. *Id.* After reporting her fall to hotel management, she went back outside to inspect where she fell. *Id.* Schmidt described the area as follows:

> I don't know how thick it was, but I can tell you that in parts of it, it was very thick. Some parts it didn't appear it was—it seemed unlevel, but it was definitely covered. The whole entranceway from sidewalk to sidewalk out several feet was definitely covered, and, like I said, if you had—I remember looking at a piece that had some crushed up looking ice, but that was more toward the door. That wasn't what I hit. And I do recall that, and when she took—Diana and them took pictures, they used, you know, a flash and we could—I could really see it. You could actually see it better through the pictures than when you were standing there looking at it.

*Id.* at 31.

Plaintiff relayed speaking with Cook at least once after her fall. *Id.* She stated that Cook told her the recent weather had been the worst ice storm Lexington had ever seen, that the hotel was out of salt, and that he was aware of the ice at the H entrance because he had received other complaints. *Id.* at 41. She further testified that she told Cook she thought she would be okay. *Id.*

3

Schmidt filed the instant suit on January 26, 2010, seeking medical and hospital expenses, among other damages. Her husband also seeks compensation for loss of consortium. Holiday Inn impleaded the Third-Party Defendant, Bulls Eye Lawn and Landscape, on March 31, 2011. DE #23 (Third-Party Complaint). Defendants moved for summary judgment on October 5, 2011 (DE #49), Bulls Eye responded in favor (DE #52), Plaintiffs responded in opposition (DE #54), and Defendants subsequently replied (DE #55). The Motion stands ripe for review. Kentucky law governs this diversity case. *Erie Railroad Co. v. Tompkins*, 58 S. Ct. 817, 822 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.").

## II. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*,

578 at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106. S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.* at 106 S. Ct. at 2552.

A fact is "material" if the underlying substantive law identifies the fact as an essential element. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511; *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be suitable for admission into evidence at trial. *Salt Lick Bancorp. v. FDIC*, 187 F. App'x 428, 444-45 (6th Cir. 2006).

### III. Analysis

#### A. *Open and Obvious Doctrine*

As the Movant, Holiday Inn bears the burden of proving absence of a genuine dispute of any material fact. Defendants' primary argument is that the open and obvious doctrine applies, resulting in an award of summary judgment in their favor because they owed no duty to Plaintiff.

5

DE #49-1 (Memorandum) at 6-9. Defendants' Motion relies almost exclusively on the Kentucky Supreme Court's holding in *PNC Bank, Kentucky, Inc. v. Green*. 30 S.W.3d 185 (Ky. 2000).[2]

Holiday Inn argues that the ice Schmidt encountered was open and obvious, as Plaintiff admitted awareness of the general icy conditions, stating that she had to walk "gingerly" and "where it was safest." DE #49-1 (Memorandum) at 8. In support of their argument, Defendants allege the following facts: (1) Plaintiff walked through the parking lot several times prior to her fall[3]; (2) Plaintiff testified that the sidewalk was lit and that her view of the walkway was unobstructed; (3) Plaintiff testified that her eyes were focused on the entrance, not the sidewalk; (4) Plaintiff's hands were full and she was talking on her cellular phone instead of taking precautions walking in the icy conditions; (5) Plaintiff's friend, Diana Black, testified that she could see the ice if she looked at the ground; and the (6) Holiday Inn's security guard on duty testified that the ice was visible. *Id.* at 8-9. Holiday Inn argues that these facts, taken as a whole, establish that "one exercising ordinary perception[,] intelligence[,] and judgment would have seen the ice and, therefore, it was open and obvious." *Id.* at 9. As a result, Holiday Inn alleges it did not owe Plaintiff a duty to either remove the ice or warn her of the hazardous condition.

In response, Plaintiff argues that genuine disputes of material fact exist over whether the open and obvious doctrine bars liability. Plaintiff's argument focuses on the following: (1) Holiday Inn employees directed Plaintiff to enter her room through an outside entrance, which the hotel knew to be icy; (2) Plaintiff was unfamiliar with the property, having never walked

---

[2] Defendants' failure to cite *Kentucky River Medical Ctr. v. McIntosh*, 319 S.W.3d 385, 388 (Ky. 2010), is perplexing. *McIntosh* is, perhaps, distinguishable from *Green* (as Defendants argue). But, *McIntosh* and its progeny undoubtedly change the landscape of the open and obvious doctrine in Kentucky. No doctrinal discussion can now be complete without accounting for this case.

[3] There is no evidence of record to support this assertion.

through the parking lot before; (3) the sidewalk, which was at least partially cleared, gave Schmidt a false sense of security; (4) Plaintiff was distracted by circumstances outside her control, like ensuring she was at the right entrance and manipulating her key and hotel property map; and (5) the ice patch was not obvious to hotel guests. DE #54 (Response) at 13-18. Third-Party Defendant, Bulls Eye Lawn and Landscape, also responded, joining in Defendants' argument and further alleging that Plaintiff's injuries resulted from her own distraction. DE #52 (Third-Party Defendant Response). In reply, Defendants argue that the Court should not consider Plaintiff's Response because it was late[4], and that Plaintiff's Response fails to allege genuine disputes of material fact. DE #55 (Reply).

Under Kentucky law, "[a]s a general rule, land possessors owe a duty to invitees to discover unreasonably dangerous conditions on the land and to either correct them or warn of them." *Kentucky River Medical Ctr. v. McIntosh*, 319 S.W.3d 385, 388 (Ky. 2010) (citing *Perry v. Williamson*, 824 S.W.2d 869, 875 (Ky. 1992)). Kentucky recognizes a limited exception to that rule—the open and obvious doctrine—which provides that possessors are not liable to invitees that are injured by open and obvious dangers. *Id.* (citing *Restatement (First) of Torts* § 340 (1934)). Natural outdoor hazards can fall within the open and obvious doctrine: "natural outdoor hazards which are as obvious to an invitee as to the owner of the premises do not constitute unreasonable risks to the former which the landlord has a duty to remove or warn against." *Green*, 30 S.W.3d at 186.

On this record, whether the risk was open and obvious is a fact question. Plaintiff arrived at the hotel at 8:30 p.m. in January. Although she acknowledges that the entrance did have some light, the nighttime conditions may have reasonably impacted her ability to perceive the ice

---

[4] The Court, preferring a merits resolution, considers the marginally tardy filing.

patch. The plaintiff in *Green* fell at 1:30 p.m., unquestionably a daylight hour even in winter storm conditions. *Green*, 30 S.W.3d at 186. Further, the extent of the exterior entrance's illumination is unclear. Plaintiff affirmed that there was "some kind of light" that enabled her to see the letter "H," DE #49-12 (Schmidt Depo.), but, to what extent, if any, the darkness diluted the open and obvious nature of the ice is a question for the jury. Further, Plaintiff testified that she saw ice and snow in the parking lot, but that once she got to the sidewalk she was looking down in front of her and did not see **any** ice in front of the doorway. DE #54-1 (Schmidt Depo.) at 21, 26. She viewed the walk as "very clear" and showing signs of having been shoveled and salted. In *Green*, the plaintiff acknowledged that the "sidewalk w[as] icy and slippery." *Green*, 30 S.W.3d at 186. A jury, not the court, must evaluate Schmidt's credibility and the accuracy of her statements.

Importantly, *Green* involved ongoing precipitation. *Id.* ("[Plaintiff] admitted that the weather conditions were poor that day, with alternating periods of snow and freezing rain."). In the instant case, although Lexington continued to suffer the after-effects of a winter storm, the area received only trace amounts of snow and precipitation on January 29, 2009, and received .01 inch of precipitation and .80 inch of snow on January 30, 2009, the date of Plaintiff's fall. DE #49-4 (Weather History). Further, Plaintiff testified that the main roads were clear on her way down from Cincinnati, DE #54-1 (Schmidt Depo.), and the record does not reflect that the weather was bad when Schmidt fell. Thus, the "virtually impossible" situation to "maintain[] a constant watch" that the landowner faced in *Green* is not present in the instant case. *Green*, S.W.3d at 187.

In *Green*, one of landowner's employees spread a melting agent on the sidewalk three times the morning of Green's fall, but Green testified that "she did not see any salt on the

8

sidewalk or notice that any measures had been taken to clear away the snow and ice." *Id.* at 186. However, Schmidt described the sidewalk as "wet" but "clear." DE #54-1 (Schmidt Depo.) at 26. She was able to roll her suitcase, and though she testified that snow was to the right and left of the sidewalk, she denied seeing the ice patch on the sidewalk. *Id.* at 24, 26. Diana Black testified that she could see the ice only if she "walked up on it and looked for it," noting that she would not have seen the ice had she not been looking for it. DE #54-4 (Black Depo.). Black also relayed going back to look at the H entrance later that night and witnessing another guest fall on the same patch of ice. *Id.* at 28. Both Schmidt and Black's testimony as to the relative clarity of the sidewalk leading up to the entrance, as contrasted to the six-foot ice sheet directly in front of the entrance, undercut the obviousness of the risk.

Further, Holiday Inn clearly undertook snow and ice removal measures.[5] Schmidt testified that at least portions of the parking lot were plowed, and she described the sidewalk as "very clear." DE #54-1 (Schmidt Depo.) at 26. The photos also support that the sidewalk had been plowed or shoveled and also that the sidewalk went from wet, clear, and salted to a sheet of ice directly in front of the door, the one place a hotel guest might logically assume to be the clearest, safest area of all.[6] *See* DE #54-4 (Photos).

---

[5] The extent of Holiday Inn's snow and ice removal on the day of Plaintiff's fall is unclear. James Springer testified in deposition that he used Ice Foe, a melting agent, on the sidewalks the morning of Plaintiff's fall. DE #54-2 (Spring Depo.) at 45. The Court previously denied Bulls Eye's motion for summary judgment, finding that genuine disputes of material fact exist as to the extent of Bulls Eye's snow and ice removal on January 30, 3009. DE #51 (Memorandum Opinion and Order).  The record indicates that someone treated the sidewalk, but Holiday Inn told Plaintiff it had "run out" of salt at some point on the fateful day. DE #54-1 (Schmidt Depo.) at 19.

[6] The Court does not decide whether the photos would be admissible, but the Court deems them sufficiently authenticated under Rule 56.

As Kentucky has long held, "[W]hether a natural hazard like ice or snow is obvious depends on the unique facts of each case." *Schreiner v. Humana, Inc.*, 625 S.W.2d 580, 581 (Ky. 1981) (reversing summary judgment on open and obvious in part because of "[plaintiff's] testimony that the ice was not visible and the walkway appeared clear"); *id.* ("[C]onstruing the facts more favorably for [plaintiff], [the court] find[s] a genuine issue exists as to whether defendant knew of a dangerous condition which was not obvious to [plaintiff]."). Other cases recognize that whether a hazard is "open and obvious" is a fact question properly submitted to the jury **if** there is a genuine factual dispute. *See Kromer v. Med. Found. of Jefferson Med. Soc., Inc.*, 2005 WL 327267, at *3 (Ky. Ct. App.) (noting that "testimony and evidence created an issue of fact regarding whether the claimed risk was open and obvious"); *Harter v. Roetting*, 2003 WL 22927750, at *1 (Ky. Ct. App.) (referencing the trial court's "open and obvious" finding: "Although appellant is right that this is an issue of fact, there was no genuine issue in this case as to whether it was an open and obvious hazard.").

On this record, the Court cannot say as a matter of law that the hazard Schmidt faced was open and obvious.[7] Although Lexington was under a state of emergency,[8] DE #49-3 (Exhibit: Major Disaster Declaration), little to no precipitation fell the day prior to or the day of Plaintiff's fall. Schmidt encountered clear roads on her trip and was not aware of the storm's severity in Lexington. DE #54-1 (Schmidt Depo.) at 16, 18. Plaintiff fell at night on a sidewalk that

---

[7] Plaintiff contends that a material dispute exists over whether "the ice formed as a result of refreezing or ponding due to a depression in the pavement," but she fails to allege any facts that would support such an allegation. DE #54 (Response) at 12-13. Further, she does not allege a design defect claim. Plaintiff did testify in deposition that the area leading up to the entrance "seemed unlevel," but she alleges **no** competent proof. Plaintiff's sloppy attempt to create a factual dispute about the "natural" formation of the hazard fails.

[8] Plaintiff argues that she did not know that the city of Lexington had been declared a state of emergency. DE #54 (Response) at 2.

appeared to have been cleared[9] up to the six feet of ice directly in front of the entrance. She further testified that she did not see the ice. A jury must assess the obviousness of the risk.

### B. *Duty Post-McIntosh*

Even if the ice was open and obvious, the Court also finds that the Kentucky Supreme Court's holding in *Kentucky River Medical Center v. McIntosh* renders summary judgment inappropriate. *Kentucky River Medical Ctr. v. McIntosh*, 319 S.W.3d 385, 388 (Ky. 2010). In *McIntosh*, the court queried whether the applicability of the open and obvious exception to a paramedic who fell on an unusual curb while rushing a critically ill patient into the emergency room was a question of fact for the jury. *Id.* at 393-95. There, the court found that the hospital owed plaintiff a duty because her injury was foreseeable due to the high potential for distraction. *Id.* at 393. The opinion stressed the context of plaintiff's injury ("rushing a critically ill patient into a hospital") and its impact on foreseeability ("[Plaintiff's need to hurry patients into the emergency room] is another reason this injury is foreseeable and that a duty existed in this case."). *Id.* at 394. The Kentucky high court plainly embraced the influence of modern comparative fault principles in this context.

---

[9] In *Estep v. B.F. Saul Real Estate Investment Trust*, 843 S.W.2d 911 (Ky. Ct. App. 1992), the court reversed summary judgment in part because the defendants undertook to clear their sidewalks of snow and ice. *Id.* at 914. Because the possessors acted, they "must act in a reasonable manner or be liable for their failure." *Id.* (quoting *Louisville Cooperage Co. v. Lawrence*, 230 S.W.2d 103, 105 (Ky. 1950)). Here, Schmidt generally knew about the parking lot conditions, but (per her testimony) she did not know about the ice sheet covering the entrance that Holiday Inn directed her to use. Holiday Inn undertook (at some point) to clear its sidewalks, and it thus was duty-bound to act reasonably. *Green*, contrasting *Estep*, said that plaintiff was "'unaware of the transparent layer of ice on the seemingly clear sidewalk until she stepped upon it, even though she was aware of the generally icy and snowy conditions then existing.'" *Green*, 30 S.W.3d at 187 (quoting *Estep*, 843 S.W.2d at 913). This created a triable issue on the "obviousness of the hazard." *Id.*

Consistent with that view, the court found that plaintiff, "in turn, had a duty to act reasonably to ensure her own safety, heightened by her familiarity with the location and the arguably open and obvious nature of the danger." *Id.* at 394. The court upheld the trial court's denial of directed verdict and judgment notwithstanding the verdict motions, finding that genuine issues of material fact were properly submitted to the jury. *Id.* at 395. The court found this approach consistent with Kentucky's comparative fault doctrine, stating:

> The lower courts should not merely label a danger as "obvious" and then deny recovery. Rather, they must ask whether the land possessor could reasonably foresee that an invitee would be injured by the danger. If the land possessor can foresee the injury, but nevertheless fails to take reasonable precautions to prevent the injury, he can be held liable. Thus, this Court rejects the minority position, which absolves, *ipso facto*, land possessors from liability when a court labels the danger open and obvious.

*Id.* at 392. Thus, "the analysis recognizes that a risk of harm may be foreseeable and unreasonable, thereby imposing a duty on the defendant, despite its potentially open and obvious nature." *Id.* at 390-91.

*McIntosh* held that foreseeability may exist when the possessor "'has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it.'" *Id.* at 390 (quoting *Restatement (Second) of Torts* § 343A(1) (1965)). Further, liability may be imposed if the land possessor expects that the invitee "will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." *Id.* (quoting *Restatement (Second) of Torts* § 343A(1) (1965)).

Plaintiff argues that her injury was foreseeable because Holiday Inn should have anticipated that Plaintiff would be distracted. While Holiday Inn had no reason to believe that Schmidt would not be tending "to each step she was taking," *id.* at 393, several factors lead the

Court to believe that Schmidt's injury may have been foreseeable. Defendants **knew** that entrance H was icy: Plaintiff testified that following her fall she complained to a hotel desk clerk about the icy conditions and the clerk told her other individuals had also complained about ice at the H entrance. DE #54-1 (Schmidt Depo.) at 17; *see also* DE #54-4 (Black Depo.) at 27, 29 .

Defendants' Motion also alleges that "Plaintiff had walked across the parking lot three times and the sidewalks surrounding the Holiday Inn twice prior to her fall." DE #49-1 (Memorandum) at 8. Defendants provide **no** support for this statement, however, and Plaintiff's Response alleges that prior to January 30, 2009, she had never been (1) to the Holiday Inn or (2) on the subject sidewalk. DE #54 (Response). In *Green*, the plaintiff was "thoroughly familiar with the structure." *Green*, 30 S.W.3d at 186. Schmidt's lack of prior knowledge of the hotel grounds is a factor the jury must consider in evaluating foreseeability.

If the hotel knew generally about the bad conditions and specifically about the danger at Entrance H, and yet sent Schmidt directly to that entrance, the ensuing harm arguably was foreseeable. Schmidt did not know the hotel. Based on Schmidt's testimony, the hotel desk clerk directed her exclusively to Entrance H as the way to her room. Neither party attached the clerk's deposition to the summary judgment briefing, but the Court has reviewed it as part of the pre-trial filings. Dustin Cook indicates no memory of the interaction but says he "should have" directed Plaintiff to an exterior and interior path. DE #77 (Cook Depo.) at 38. He certainly would have showed the exterior path as the "closest entrance to [her] room" and the "easiest way." *See id.* at 24. The key in this context, however, is Schmidt's testimony. She testified that Cook only showed her the dangerous exterior entrance. DE #54-1 (Schmidt Depo.) at 19.

A land possessor and invitee being on equal footing (so to speak) relative to an open and obvious danger is one thing. A possessor that knows an area is dangerous and yet tells an invitee

to encounter the danger is a different matter. The hotel surely could foresee that a guest, unfamiliar with the premises, would trust and follow the hotel's entry advice, advice that later proved bad. The jury may blame Schmidt for some or all of the event, but it is the jury that must make the assessment.

Based on this analysis, a jury must determine whether Holiday Inn had "reason to expect that [Schmidt would] proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." *Restatement (Second) of Torts* § 343A.

An example from § 343A is illustrative:

> A owns an office building, in which he rents an office for business purposes to B. The only approach to the office is over a slippery waxed stairway, whose condition is visible and quite obvious. C, employed by B in the office, uses the stairway on her way to work, slips on it, and is injured. Her only alternative to taking the risk was to forgo her employment. A is subject to liability to C.

*Id.* cmt. F, illus. 5; *see also Wallingford v. Kroger Co.*, 761 S.W.2d 621 (Ky. Ct. App. 1988) (reversing directed verdict and remanding for a jury's consideration of comparative negligence when employee was forced to use icy ramp to deliver goods to grocer and grocer was on notice of snow and ice on the ramp); *id.* at 624 ("Our ruling . . . only underscores the widely applied rule that all persons should exercise ordinary care for the safety of others who foreseeably may be injured by theirs acts or omissions." (citations omitted)) . Schmidt asserts that she was given directions that forced her to traverse the hazard or forego the only known route of getting to her room. Taking the record as a whole, the Court finds a fact question regarding the applicability of *McIntosh*'s second exception, or intentionally encountering a risk despite knowledge of that risk.

As the Commentary further states,

> In determining whether the possessor of land should expect harm to invitees notwithstanding the known or obvious character of the danger, the fact that premises have been held open to the visitor, and that he has been invited to use them, is always a factor to be considered, as offering some assurance to the invitee that the place has been prepared for his reception, and that reasonable care has been used to make it safe.

*Restatement (Second) of Torts* § 343A cmt. G.. This is precisely the case here, where the hotel knew well the risk and sent Schmidt on a path that assured she would have to traverse the risk (or figure out on her own a different path). It is no surprise that Schmidt forged on as the possessor counseled.

The Court's summary judgment conclusion is supported by the string of recent Kentucky cases attempting to flesh out *McIntosh*'s impact on the open and obvious exception's landscape. In both *Faller v. Endicott-Mayflower, LLC*, 2011 WL 2582339 (Ky. Ct. App.) and *Shelton v. Kentucky Easter Seals Society, Inc.*, 2011 WL 2496182 (Ky. Ct. App.), the Court applied the *McIntosh* framework strictly.[10] In *Webb v. Dick's Sporting Goods*, 2011 WL 3362217 (Ky. Ct. App.), the court applied *McIntosh* more generally, stating:

---

[10] In the aptly styled *Faller v. Endicott-Mayflower, LLC*, 2011 WL 2582339 (Ky. Ct. App.), the court refused to apply either exception, extensively opining about the rationale behind *McIntosh*. *Id.* at *4-*5. In *Faller*, plaintiff tripped over a threshold marked with yellow- and black-striped caution tape while leaving a restaurant. *Id.* at *1. She was leaving the restaurant, which she had frequented many times before, after a leisurely lunch and without time constraint. *Id.* Based on the factual differences between Faller's injury and plaintiff's injury in *McIntosh*, the court upheld summary judgment for the defendant. *Id.* at *5.

In *Shelton v. Kentucky Easter Seals Society, Inc.*, 2011 WL 2496182 (Ky. Ct. App.), the Court of Appeals of Kentucky found that defendant did not owe a duty and that neither exception to the doctrine applied. In *Shelton*, plaintiff visited her husband in the hospital and tripped over wires that were next to his bed. *Id.* at *1. The court refused to apply either exception of the open and obvious doctrine, highlighting the situational differences between plaintiff's injury in *McIntosh* and Mrs. Shelton's injury. *Id.* at *3 ("Mrs. Shelton failed to give evidence that she was acting under any stress or time constraints when she tripped and fell."); *id.* ("Mrs. Shelton has not shown that there was any urgent need for her to approach her husband's bed that day.").

> Based on our reading of *McIntosh*, a trial court is required to determine whether the landowner met its duty to protect the invitee in all circumstances where it is foreseeable that the invitee might: be distracted; realize there is a danger but forget about that danger; or choose to ignore the danger because the benefit outweighs the risk.

*Id.* at *3. The plaintiff in *Webb* fell near the entrance of a busy retail store on a floor that was slick from rain. *Id.* at *1. The court denied summary judgment, finding that it was foreseeable that plaintiff would appreciate the wetness of the floor but proceed into the store anyway. *Id.* at *3. The Court agrees with *Webb*'s view that *McIntosh* states categorical principles

Nothing in the plain language of *McIntosh* limits its holding to man-made hazards or emergency situations. Further, following *Webb*, federal courts in Kentucky have also applied *McIntosh* more generally. *See Lahutsky v. Wagner Moving & Storage, Inc.*, 2011 WL 5597330 (W.D. Ky.) (denying summary judgment after a plaintiff slipped and fell on an exterior icy stairway); *see also Powers v. Tirupathi Hospitality, LLC*, 2001 WL 251001, at *4 (E.D. Ky.) ("[T]he Court concludes that the Kentucky Supreme Court intended for its decision in *McIntosh* to apply to all premises owner liability claims, including cases involving purportedly open and obvious natural outdoor hazards."); *id.* at *5 ("Applying *McIntosh* to the case at hand, it is clear that, under Kentucky law, the question of whether the icy parking lot was an open and obvious hazard is a question of fact to be resolved by a jury."). On this record, a jury must decide whether the ice was open and obvious and, if so, whether Schmidt acted reasonably in proceeding to cross it anyway.

## IV. Conclusion

Whether the ice was open and obvious is a fact question. Alternatively, the real question is foreseeability: if the ice was open and obvious, Holiday Inn still may have reasonably foreseen that Schmidt would fall. Under *McIntosh*, the jury must sort out these facts and related questions.

Therefore, for the reasons discussed above, the Court **DENIES** Defendants' Motion for Summary Judgment (DE #49). On this record, judgment for Defendants as a matter of law is inappropriate.

This the 8th day of February, 2012.

Signed By:
*Robert E. Wier*  RW
United States Magistrate Judge